1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

DAVID KINSEY,                          )        No. CV 03-06815 (CW)
                                       )
                 Plaintiff,            )        DECISION AND ORDER
          v.                           )
                                       )
JO ANNE B. BARNHART,                   )
Commissioner, Social Security )
Administration,                        )
                                       )
                 Defendant.            )
_____)

     The parties have consented, under 28 U.S.C. § 636(c), to the
jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks
review of the Commissioner's denial of disability benefits.  As
discussed below, the court finds that the Commissioner's decision
should be reversed and this matter remanded for further proceedings.

                         **I.   BACKGROUND**

     Plaintiff David Kinsey was born on August 27, 1948, and was
fifty-three years old at the time of his administrative hearing.
[Administrative Record "AR" 43, 44.]  Plaintiff has a twelfth grade
education and past relevant work experience as a security guard. [AR

1

44.]  He claims disability on the basis of pain in his head, back and leg, depression, and auditory hallucinations. [Joint Stipulation "JS" 2.]

## II.  PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on September 22, 2003, and filed on September 25, 2003.  On February 24, 2004, defendant filed plaintiff's Administrative Record ("AR").  On June 24, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits and supplemental security income on July 30, 2001, alleging disability since August 5, 2001.  [JS 1, AR 111.]  An administrative hearing was held on July 1, 2002, before Administrative Law Judge ("ALJ") Cynthia A. Minter.  [Transcript, AR 41.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff and vocational expert Randi Hetrick.  [Id.] The ALJ denied benefits on November 27, 2002. [Decision, AR 28.]  When the Appeals Council denied review on August 15, 2003, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not

2

1    supported by substantial evidence in the record, the court may reject

2    the finding and set aside the decision to deny benefits.  See Aukland

3    v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

4    Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

5    F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,

6    1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

7    1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada

8    v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

9         "Substantial evidence is more than a scintilla, but less than a

10   preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence

11   which a reasonable person might accept as adequate to support a

12   conclusion."  Id.  To determine whether substantial evidence supports

13   a finding, a court must review the administrative record as a whole,

14   "weighing both the evidence that supports and the evidence that

15   detracts from the Commissioner's conclusion."  Id.  "If the evidence

16   can reasonably support either affirming or reversing," the reviewing

17   court "may not substitute its judgment" for that of the Commissioner.

18   Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

19                          **V.  DISCUSSION**

20        **A.   THE FIVE-STEP EVALUATION**

21        To be eligible for disability benefits a claimant must

22   demonstrate a medically determinable impairment which prevents the

23   claimant from engaging in substantial gainful activity and which is

24   expected to result in death or to last for a continuous period of at

25   least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

26   721; 42 U.S.C. § 423(d)(1)(A).

27        Disability claims are evaluated using a five-step test:

28             Step one: Is the claimant engaging in substantial

                                    3

gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
        Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
        Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
        Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
        Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

education, and work experience, a claimant can perform other work which is available in significant numbers. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In plaintiff's case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the claimed onset date of August 5, 2001 (step one), that plaintiff had "severe" impairments, namely hypertension, osteoarthritis, and a vision impairment (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 25.] The ALJ found that plaintiff retained the RFC to perform his past relevant work as a security guard (step four). [AR 27.]  Accordingly, the ALJ concluded that plaintiff was not "disabled" as defined by the Social Security Act. [<u>Id.</u>]

**C.   PLAINTIFF'S PRESENT CLAIM**

The plaintiff challenges the ALJ's decision, claiming that the ALJ erred in finding that plaintiff did not suffer from a "severe" mental impairment.  As discussed below, this claim has merit and requires remand for further proceedings.

**D.   THE EFFECT OF PLAINTIFF'S ALCOHOL ABUSE ON HIS MENTAL IMPAIRMENTS**

Step-two analysis requires that claimants have one or more "severe" impairments that significantly limit their physical or mental ability to conduct basic work activities. <u>Celaya v. Halter</u>, 332 F.3d 1177, 1180 (9th Cir. 2003).  Despite the use of the word "severe" in the step-two analysis, most circuits (including the Ninth) have held

---

n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation. <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1    that "the step two inquiry is a <u>de</u> <u>minimis</u> screening device to dispose

2    of groundless claims." <u>Smolen</u>, 80 F.3d at 1290, citing <u>Bowen v.</u>

3    <u>Yuckert</u>, 482 U.S. at 153-54; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Hawkins v. Chater</u>, 113

4    F.3d 1162, 1169 (10th Cir. 1997); and <u>Hudson v. Bowen</u>, 870 F.2d 1392,

5    1396 (8th Cir. 1989) (evaluation can stop at step two only when there

6    is no more than a minimal effect on ability to work). Under CFR §§

7    404.1520(a)(4)(i), 416.920(a)(4)(i), a mental impairment is considered

8    "severe" if it presents "more than a minimal limitation" in an

9    individual's ability to do basic work activities.

10       From February to June 2002, plaintiff received psychiatric

11   treatment from Dr. Anita Washington at the Los Angeles County

12   Department of Mental Health in Compton. [AR 259, 264.] During

13   plaintiff's "Adult Initial Assessment" on February 14, 2002, Dr.

14   Washington reported that plaintiff complained of auditory and visual

15   hallucinations, insomnia, and suicidal ideation. [AR 272.] Dr.

16   Washington completed a check-off list detailing her observations of

17   plaintiff, which included agitated motor activity, loud and excessive

18   speech, a silly interactional style, impaired intellectual functioning

19   and an anxious mood. [AR 271.] During this initial exam, Dr.

20   Washington assessed plaintiff with a GAF score of 40[2]. [AR 272.] Dr.

21

22       [2] A GAF score represents a clinical evaluation of an
     individual's overall level of functioning. A GAF score of 31 to 40
23   indicates "[s]ome impairment in reality testing or communication
     (e.g., speech is at all times illogical, obscure or irrelevant) OR
24   major impairment in several areas, such as work or school, family
     relations, judgment, thinking or mood (e.g. depressed man avoids
25   friends, neglects family and is unable to work; child frequently beats
     up younger children, is defiant at home and is failing at school."
26   <u>DSM-IV</u>, <u>American Psychiatric Association</u>, (Washington, 1994). A GAF
     score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal
27   ideation, severe obsessional rituals, frequent shoplifting) OR any
     serious impairment in social, occupational or school functioning
28   (e.g., no friends, unable to keep job.) <u>Id.</u>

                                    6

1   Washington also noted that plaintiff has been drinking heavily since
2   the age of twenty or twenty-one and that he minimizes his drinking
3   problem. [AR 269, 272.]

4       In assessing the "severity" of plaintiff's impairments during
5   step two of the sequential analysis, however, the ALJ found that
6   plaintiff's "alcohol abuse...seems to have been critically linked to
7   his other mental impairments." [AR 25.]  The ALJ noted that plaintiff
8   received mental health treatment for "a few months in 2002" and was
9   diagnosed with "[m]ajor [d]epressive disorder, recurrent, and alcohol
10  abuse or dependence" but nonetheless concluded that plaintiff had
11  adequate control over his condition with medication and that there was
12  no "pattern of persistently limiting, significant symptoms, including
13  hallucination." [AR 24-25.]   The ALJ adopted the opinions of an
14  examining psychiatrist and state agency review physician, who each
15  concluded that plaintiff's mental impairments did not preclude him
16  from working. [AR 26.]  Thus, the ALJ concluded that plaintiff "is not
17  found to have had any significantly limiting mental impairments."
18  [Id.]  The ALJ then completed the sequential evaluation by assessing
19  plaintiff's RFC without taking into account his mental impairments or
20  alcohol use. [AR 26.]

21      A disability claimant is not eligible to receive benefits if drug
22  or alcohol addiction is a "contributing factor material to the
23  determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).
24  The key factor in determining whether alcoholism or drug addiction is
25  a "contributing factor material to the determination of disability" is
26  whether an individual would still be found disabled if he or she
27  stopped using alcohol or drugs.  Sousa v. Callahan, 143 F.3d 1240,
28  1245 (9th Cir. 1998); 20 C.F.R. §404.1535(b)(1), 416.935(b)(1).  The

7

Ninth Circuit has set forth the manner in which such a determination must be made:

> [A]n ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed...to determine if the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs.

Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001)(citations omitted).

In this case, the ALJ erred by concluding at step two that plaintiff's alcohol abuse "seems to have been critically linked to his other mental impairments." [AR 25.] The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of plaintiff's alcohol abuse on his other mental impairments. Bustamante, 262 F.3d at 955. The ALJ's evaluation of plaintiff's alcohol use would have been appropriate only after the ALJ found plaintiff was disabled under the five-step inquiry. Id.

In addition, there is no medical evidence in the record to support the ALJ's conclusion that plaintiff's alcohol abuse is "critically linked to his other mental impairments." [AR 25.] Although Dr. Washington, the examining psychiatrist and the state agency review psychiatrist each noted repeatedly that plaintiff had an alcohol problem, none of them said anything to suggest that

8

plaintiff's alcohol abuse was a contributing factor material to his
disability. [AR 212, 236, 240, 260, 261, 269, 272.]   Thus, it was
error for the ALJ to assume that plaintiff's alcohol use was
"critically linked" to his depression and other mental impairments.
Ingram v. Chater, 72 Fed. Appx. 631, 636 (9th Cir. 2003)(although
alcoholism inevitably contributes to other mental impairments, this
does not establish materiality); see also Holohan v. Massanari, 246
F.3d 1195, 1209 (9th Cir. 2001) (alcoholism that "contributes to" a
disability is importantly different from a determination that it is a
"contributing factor material to" the disability).   Upon remand, it
may be necessary to obtain a medical opinion regarding the impact of
plaintiff's alcohol abuse on his mental impairments.

        Finally, to the extent that the ALJ concluded that plaintiff's
mental impairments were not severe regardless of the impact of alcohol
abuse, such a conclusion is not supported by substantial evidence.
Specifically, the ALJ erred in characterizing plaintiff's mental
impairments as adequately controlled with medication and presenting no
"pattern of persistently limiting, significant symptoms, including
hallucinations." [AR 25.]   Plaintiff's medication log from the Los
Angeles County Department of Mental Health showed that he was
prescribed zyprexa and celexa from March to May 2002. [AR 276-277.]
Although plaintiff reported that the medication "helps me relax [and]
sleep," there is nothing in the record that shows plaintiff's mental
impairments were "controlled" by the medications. [AR 276.]   In July
2002, Plaintiff testified that was still taking the medications and
seeing Dr. Washington. [AR 58, 59, 63.]   Plaintiff also testified that
he continues to have nightmares, insomnia and visual hallucinations.
[AR 58, 59-60.]   Such testimony is at odds with the ALJ's conclusion

                                    9

1    that there is no pattern of significant symptoms or hallucinations.

2    [AR 25.]   In addition, each physician who examined plaintiff or

3    reviewed his medical file diagnosed him with at least some level of

4    mental impairment. [AR 215, 231, 233, 272.]   Dr. Washington,

5    plaintiff's treating psychiatrist, initially assessed plaintiff with a

6    GAF of 40. [AR 272.]   Based on the evidence as a whole, it is clear

7    that plaintiff suffers from a "severe" mental impairment under the

8    step-two analysis.

9         **E.   REMAND FOR FURTHER PROCEEDINGS**

10        The decision whether to remand for further proceedings is within

11   the discretion of the district court.   Harman v. Apfel, 211 F.3d 1172,

12   1175-1178 (9th Cir. 2000).   Where no useful purpose would be served by

13   further proceedings, or where the record has been fully developed, it

14   is appropriate to exercise this discretion to direct an immediate

15   award of benefits.   Harman, 211 F.3d at 1179 (decision whether to

16   remand for further proceedings turns upon their likely utility).

17   However, where there are outstanding issues that must be resolved

18   before a determination can be made, and it is not clear from the

19   record that the ALJ would be required to find the claimant disabled if

20   all the evidence were properly evaluated, remand is appropriate.   Id.

21        Here, there are outstanding issues to be resolved.   The ALJ

22   should proceed with step three (and four and five, if necessary) of

23   the disability determination without attempting to separate out the

24   impact of plaintiff's alcohol use.   If it is determined that plaintiff

25   is disabled under the five-step inquiry, the ALJ may then consider

26   whether alcohol abuse is a "contributing factor material to" that

27   determination.

28

1

## VI.  ORDERS

2      Accordingly, **IT IS ORDERED** that:

3      1.   The decision of the Commissioner is **REVERSED**.

4      2.   This action is **REMANDED** to defendant, pursuant to Sentence

5 Four of 42 U.S.C. § 405(g), for further proceedings as discussed

6 above.

7      3.   The Clerk of the Court shall serve this Decision and Order

8 and the Judgment herein on all parties or counsel.

9

10 DATED: November 28, 2005

11                                    __/s/_____
                                          CARLA M.  WOEHRLE
12                                    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28